## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSIE BADGER and EMILY GELLATLY, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | |
| v. | **FILED ELECTRONICALLY** |
| CROSSAMERICA PARTNERS LP d/b/a CROSSAMERICA; CROSSAMERICA GP, LLC; CST BRANDS, INC.; LGP REALTY HOLDINGS LP; and LEHIGH GAS WHOLESALE SERVICES, INC., | |
| Defendants. | |

## NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Josie Badger and Emily Gellatly (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action individually and on behalf of all others similarly situated against CrossAmerica Partners LP, CrossAmerica GP, LLC, CST Brands, Inc., LGP Realty Holdings LP, and Lehigh Gas Wholesale Services, Inc. (collectively referred to as "Defendants"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (the "ADA") and its implementing regulations, in connection with accessibility barriers in the parking lots and paths of travel at various public accommodations owned, operated, controlled and/or leased by Defendants ("Defendants' facilities").

2.      Plaintiff Josie Badger ("Plaintiff Badger") has a mobility disability and is limited in the major life activity of walking, which has caused her to be dependent upon a wheelchair for mobility.

3.      Plaintiff Emily Gellatly ("Plaintiff Gellatly") has a mobility disability and is limited in the major life activity of walking, which has caused him to be dependent upon a wheelchair for mobility.

4.      Plaintiffs have visited Defendants' facilities and were denied full and equal access as a result of Defendants' inaccessible parking lots and paths of travel.

5.      Plaintiffs' experiences are not isolated—Defendants have systematically discriminated against individuals with mobility disabilities by implementing policies and practices that consistently violate the ADA's accessibility guidelines and routinely result in access barriers at Defendants' facilities.

6.      In fact, numerous facilities owned, controlled and/or operated by Defendants have parking lots and paths of travel that are inaccessible to individuals who rely on wheelchairs for mobility, demonstrating that the centralized decision making Defendants employ with regard to the design, construction, alteration, maintenance and operation of its facilities causes access barriers, and/or allows them to develop and persist at Defendants' facilities.

7.      Unless Defendants are required to remove the access barriers described below, and required to change its policies and practices so that access barriers do not reoccur at Defendants' facilities, Plaintiffs and the proposed Class will continue to be denied full and equal access to those facilities as described, and will be deterred from fully using Defendants' facilities.

8.      The ADA expressly contemplates injunctive relief aimed at modification of a policy or practice that Plaintiffs seek in this action.  In relevant part, the ADA states:

> [i]n the case of violations of…this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the…modification of a policy….

42 U.S.C. § 12188(a)(2).

9.      Consistent with 42 U.S.C. § 12188(a)(2) Plaintiffs seek a permanent injunction requiring that:

   a) Defendants remediate all parking and path of travel access barriers at Defendants' facilities, consistent with the ADA;

   b) Defendants change their policies and practices so that the parking and path of travel access barriers at Defendants' facilities do not reoccur; and,

   c) Plaintiffs' representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 9(a) and 9(b) has been implemented and will remain in place.

10.      Plaintiffs' claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiffs seek injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals.  To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2).  This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate….Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

11.      The ADA was enacted over a quarter century ago and is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).

3

12.    The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

13.    Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly, or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

14.    Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

15.    Title III and its implementing regulations define discrimination to include the following:

a)    Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 CFR § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

b)    Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

c)    For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

d)    Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

4

16.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183.  42 U.S.C. 12188(a)(1).

17.     The ADA also provides for specific injunctive relief, which includes the following:

> In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter.    Where appropriate, injunctive relief shall also include…modification of a policy…to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

## JURISDICTION AND VENUE

18.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

19.     Plaintiffs' claims asserted herein arose in this judicial district and Defendants do substantial business in this judicial district.

20.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

21.     Plaintiff Badger is and, at all times relevant hereto, was a resident of Pennsylvania. As described above, as a result of her disability, Plaintiff Badger relies upon a wheelchair for mobility.  She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

22.     Plaintiff Gellatly is and, at all times relevant hereto, was a resident of Ohio.  As described above, as a result of her disability, Plaintiff Gellatly relies upon a wheelchair for

mobility. She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

23.     Defendant CrossAmerica Partners LP is a Delaware Limited Partnership headquartered at 515 Hamilton Street, Suite 200, Allentown, PA 18101.

24.     Defendant CrossAmerica GP, LLC is a Delaware Limited Liability Company headquartered, on information and belief, at 515 Hamilton Street, Suite 200, Allentown, PA 18101.

25.     Defendant CST Brands, Inc. is, on information and belief, a Delaware Corporation headquartered at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

26.     Defendant LGP Realty Holdings LP is, on information and belief, a wholly-owned subsidiary of Defendant CrossAmerica Partners LP and a Delaware Limited Partnership headquartered at 515 Hamilton Street, Suite 200, Allentown, PA 18101.

27.     Defendant Lehigh Gas Wholesale Services, Inc. is, on information and belief, a wholly-owned subsidiary of Defendant CrossAmerica Partners LP and a Delaware Corporation headquartered at 515 Hamilton Street, Suite 200, Allentown, PA 18101.

28.     Defendants are a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

**I.     Plaintiffs Have Been Denied Full and Equal Access to Defendants' Facilities.**

29.     Plaintiff Badger has visited Defendants' facilities located at 400 Philadelphia Street, Indiana, PA and 4616 McKnight Road, Pittsburgh, PA, including within the last year, where she experienced unnecessary difficulty and risk in the parking area of the facilities due to a lack of accessible parking, excessive slopes and because of other ADA accessibility violations as set forth in more detail below.

30.     Plaintiff Gellatly has visited Defendants' facilities located at 2643 Warrensville Center Road, Cleveland, OH, and 4901 Fleet Avenue, Cleveland, OH, including within the last year, where she experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking space and because of other ADA accessibility violations as set forth in more detail below.

31.     Despite these risks, Plaintiff Badger plans to return to Defendants' facilities, as she lives in and travels frequently throughout the Pittsburgh and Western Pennsylvania region. Furthermore, Plaintiff Badger intends to return to Defendants' facilities to ascertain whether those facilities remain in violation of the ADA.

32.     Plaintiff Gellatly plans to return to Defendants' facilities, as she attends university in Western Pennsylvania and regularly travels throughout Ohio and the Pittsburgh region visiting friends and family for shopping and dining.  Furthermore, Plaintiff Gellatly intends to return to Defendants' facilities to ascertain whether those facilities remain in violation of the ADA.

33.     As a result of Defendants' non-compliance with the ADA, Plaintiffs' ability to access and safely use Defendants' facilities has been significantly impeded.

34.     Plaintiffs will be deterred from returning to and fully and safely accessing Defendants' facilities, however, so long as Defendants' facilities remain non-compliant, and so long as Defendants continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendants' facilities.

35.     Without injunctive relief, Plaintiffs will continue to be unable to fully and safely access Defendants' facilities in violation of her rights under the ADA.

36.     As individuals with a mobility disability who are dependent upon a wheelchair, Plaintiffs are directly interested in whether public accommodations, like Defendants, have

7

architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

**II.    Defendants Repeatedly Deny Individuals With Disabilities Full and Equal Access to Defendants' Facilities.**

37.    Defendants are engaged in the ownership, management and development of convenience stores located throughout the United States.

38.    As the owner and manager of their properties, Defendants employ centralized policies, practices and procedures with regard to the design, construction, alteration, maintenance and operation of its facilities.

39.    To date, Defendants' centralized design, construction, alteration, maintenance and operational policies and practices have systematically and routinely violated the ADA by designing, constructing and altering facilities so that they are not readily accessible and usable, by failing to remove architectural barriers, and by failing to maintain and operate facilities so that the accessible features of Defendants' facilities are maintained.

40.    On Plaintiffs' behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendants, and found the following violations, which are illustrative of the fact that Defendants implement policies and practices that routinely result in accessibility violations:

    a)   400 Philadelphia Street, Indiana, PA

        i.   The surfaces of one or more purportedly accessible spaces had slopes exceeding 2.1%; and

        ii.   The surfaces of one or more accessible aisles had slopes exceeding 2.1%.

    b)   2501 Brighton Road, Pittsburgh, PA

        i.   No attempts at designating "accessible" parking spaces:

            1.   No spaces were designated as "accessible";

       2. No spaces were designated as "van accessible";

       3. No spaces were marked with required signage;

       4. No spaces were marked with required striping;

       5. No access aisles were provided; and

       6. No accessible routes to store entrance were provided.

c) 2200 Babcock Blvd, Pittsburgh, PA

   i. No attempts at designating "accessible" parking spaces:

       1. No spaces were designated as "accessible";

       2. No spaces were designated as "van accessible";

       3. No spaces were marked with required signage;

       4. No spaces were marked with required striping;

       5. No access aisles were provided; and

       6. No accessible routes to store entrance were provided.

d) 4616 McKnight Road, Pittsburgh, PA

   i. No attempts at designating "accessible" parking spaces:

       1. No spaces were designated as "accessible";

       2. No spaces were designated as "van accessible";

       3. No spaces were marked with required signage;

       4. No spaces were marked with required striping;

       5. No access aisles were provided; and

       6. No accessible routes to store entrance were provided.

e) 552 E 152nd Street, Cleveland, OH

   i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

   ii. The maneuvering clearance area immediately adjacent to the facility's entrance had a slope exceeding 2.1%.

    f)  4901 Fleet Avenue, Cleveland, OH

        i.  The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

        ii.  The surfaces of one or more access aisles had slopes exceeding 2.1%.

    g)  3983 Mayfield Road, Cleveland, OH

        i.  The maneuvering clearance area immediately adjacent to the facility's entrance had a slope exceeding 2.1%.

    h)  2643 Warrensville Center Road, Cleveland, OH

        i.  No attempts at designating "accessible" parking spaces:

            1.  No spaces were designated as "accessible";

            2.  No spaces were designated as "van accessible";

            3.  No spaces were marked with required signage;

            4.  No spaces were marked with required striping;

            5.  No access aisles were provided; and

            6.  No accessible routes to store entrance were provided.

    i)  5510 St Clair Avenue, Cleveland, OH

        i.  No attempts at designating "accessible" parking spaces:

            1.  No spaces were designated as "accessible";

            2.  No spaces were designated as "van accessible";

            3.  No spaces were marked with required signage;

            4.  No spaces were marked with required striping;

            5.  No access aisles were provided; and

            6.  No accessible routes to store entrance were provided.

41.    The fact that individuals with mobility-related disabilities are denied full and equal access to numerous of Defendants' facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiffs experienced

10

is not isolated, but rather, caused by Defendants' systemic disregard for the rights of individuals with disabilities.

42.     Defendants' systemic access violations demonstrate that Defendants either employ policies and practices that fail to design, construct and alter its facilities so that they are readily accessible and usable, and/or that Defendants employ maintenance and operational policies and practices that are unable to maintain accessibility.

43.     As evidenced by the widespread inaccessibility of Defendants' parking facilities, absent a change in Defendants' corporate policies and practices, access barriers are likely to reoccur in Defendants' facilities even after they have been remediated.

44.     Accordingly, Plaintiffs seek an injunction to remove the barriers currently present at Defendants' facilities and an injunction to modify the policies and practices that have created or allowed, and will create and allow, inaccessibility to affect Defendants' network of facilities.

## CLASS ALLEGATIONS

45.     Plaintiffs bring this class action, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and the following nationwide class:   all wheelchair users who have attempted, or will attempt, to utilize the parking facilities at all locations within the United States for which Defendants own and/or control the parking facilities.

46.     Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

47.    <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the members of the class. The claims of Plaintiffs and members of the class are based on the same legal theories and arise from the same unlawful conduct.

48.    <u>Common Questions of Fact and Law</u>:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

49.    <u>Adequacy of Representation</u>:  Plaintiffs are an adequate representative of the class because their interests do not conflict with the interests of the members of the class.  Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class and have no interests antagonistic to the members of the class.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

50.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

## **SUBSTANTIVE VIOLATION**

51.    The allegations contained in the previous paragraphs are incorporated by reference.

52.    Defendants' facilities were altered, designed, or constructed, after the effective date of the ADA.

53.     Defendants' facilities are required to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs.  42 U.S.C. § 12183(a).

54.     Further, the accessible features of Defendants' facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.  28 CFR § 36.211.

55.     The architectural barriers described above demonstrate that Defendants' facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs, and/or that Defendants' facilities were not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

56.     Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers, as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

57.     Defendants' repeated and systemic failures to design, construct and alter facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

58.     Defendants' facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

59.     Defendants are required to provide individuals who use wheelchairs full and equal enjoyment of its facilities.  42 U.S.C. § 12182(a).

60.     Defendants have failed, and continue to fail, to provide individuals who use wheelchairs with full and equal enjoyment of its facilities.

61.     Defendants have discriminated against Plaintiffs and the Class in that they have failed to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

62.     Defendants' conduct is ongoing and continuous, and Plaintiffs have been harmed by Defendants' conduct.

63.     Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiffs and the Class.

64.     Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiffs invoke their statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the class, pray for:

a.      A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501(b) which directs Defendants to:  (i) take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii)  that Defendants change their policies and practices to prevent the reoccurrence of access barriers post-remediation; and, (iii) that Plaintiff

shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.      An Order certifying the class proposed by Plaintiffs, and naming Plaintiffs are class representatives and appointing their counsel as class counsel;

d.      Payment of costs of suit;

e.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f.      The provision of whatever other relief the Court deems just, equitable and appropriate.


Dated:  December 27, 2017                    Respectfully Submitted,

                                             By: */s/ Benjamin J. Sweet*
                                             Benjamin J. Sweet
                                             **CARLSON LYNCH SWEET**
                                             **KILPELA & CARPENTER, LLP**
                                             1133 Penn Avenue, 5th Floor
                                             Pittsburgh, PA 15222
                                             Tel: 412-322-9243

                                             *Counsel for Plaintiffs*

15